# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2952

_____

Paul A. Wojewski, M.D.,                    *
                                           *
            Plaintiff,                      *
                                           *
Sara Wojewski,                             *
                                           *
            Appellant,                      *
                                           *    Appeal from the United States
      v.                                    *    District Court for the
                                           *    District of South Dakota.
Rapid City Regional Hospital, Inc.;        *
Charles Hart, M.D.; Robert Glenn           *
Allen, Jr., M.D.,                          *
                                           *
            Defendants - Appellees.         *

_____

Submitted: February 17, 2006
Filed: June 9, 2006

_____

Before LOKEN, Chief Judge, LAY and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Dr. Paul A. Wojewski sued Rapid City Regional Hospital and two of its administrators, claiming violations of the Americans with Disabilities Act ("ADA")

and the Rehabilitation Act, as well as various state law claims. The district court[1] granted the defendants' motion for summary judgment on the claims under the ADA and the Rehabilitation Act. Dr. Wojewski appealed. With respect to the ADA Title III claim, we vacate the district court's order and remand with instructions to dismiss the claim as moot. We otherwise affirm.

## I. *Background*

In early 1988, Dr. Wojewski, a cardiothoracic surgeon, became a member of the medical staff at Rapid City Regional Hospital ("RCRH"). Dr. Wojewski's staff status entitled him to admit patients, use the hospital's facilities, and perform surgery at RCRH. Dr. Wojewski could also use RCRH employees, such as nurses, to assist him in surgery. Dr. Wojewski performed all of his operations at RCRH, as it is the only suitable facility in the region for cardiothoracic surgeries. However, Dr. Wojewski leased separate office space and maintained his own staff (including office staff, nurses and a physician's assistant) whom he hired and paid.

Medical staff membership required Dr. Wojewski to provide appropriate patient care, abide by medical staff bylaws, prepare required medical records, abide by ethical principles, attend an orientation program, participate in continuing medical education, and schedule operating room time. Dr. Wojewski also agreed to take calls from the RCRH emergency room for heart-related emergencies.

Dr. Wojewski billed his patients directly, and the patients remitted payments directly to Dr. Wojewski. In other words, RCRH did not bill patients for Dr. Wojewski's services and did not pay Dr. Wojewski for his services. The hospital did not issue a form W-2 or 1099 to Dr. Wojewski and did not pay his social security taxes or provide benefits, such as health and malpractice insurance.

---

[1]The Honorable Richard H. Battey, United States District Judge for the District of South Dakota.

In 1996, Dr. Wojewski was diagnosed with bipolar disorder and took a leave of absence for treatment. Later that year, RCRH conditionally reinstated Dr. Wojewski's staff privileges on a limited basis as outlined in a Letter of Agreement. In August of 2003, RCRH reinstated Dr. Wojewski to the active medical staff subject to certain conditions that were outlined in a Letter of Agreement. This 2003 Letter of Agreement required that Dr. Wojewski "meet periodically with a monitoring physician; meet with [certain medical officers] upon demand." In addition, the agreement required that Dr. Wojewski "take mandatory vacations"; limit the time he was on call; participate in therapy; take prescribed medications and refrain from taking unprescribed medications; "consume no more than three glasses of wine per week"; submit to "random biological fluid collection"; "submit to . . . mental, physical or medical competency examinations" demanded of him; limit traveling; release all medical or other personal information relevant to his impairment; "submit to review of 100% of his surgical cases for a period of six months from the date of reinstatement"; and "submit a formal proctorship of his clinic and hospital practice."

After being reinstated, Dr. Wojewski entered a manic phase of his disorder. Specifically, Dr. Wojewski experienced an acute episode while performing open-heart surgery. Following a hearing, RCRH terminated Dr. Wojewski's medical staff privileges based upon concerns for patient safety.

Dr. Wojewski filed a discrimination claim with the South Dakota Department of Labor, Division of Human Rights ("DHR") and the Equal Employment Opportunity Commission ("EEOC"). The DHR issued a "no probable cause" determination, finding that Dr. Wojewski was not a covered employee under South Dakota law. Dr. Wojewski did not appeal that decision. The EEOC issued a Notice of Right to Sue, and Dr. Wojewski filed a complaint in federal district court. In his complaint, Dr. Wojewski sought relief under Title I of the ADA, Title III of the ADA, and the Rehabilitation Act. The complaint also alleged various state law claims that are not relevant to this appeal.

The defendants moved for summary judgment on the ADA and Rehabilitation Act claims, and the district court granted the motion. The court held that Dr. Wojewski's claims under Title I of the ADA and under the Rehabilitation Act failed because he was not an employee of RCRH but was an independent contractor. With respect to the claim under Title III of the ADA, the court held that Dr. Wojewski did not qualify for relief because he was not a client or customer of RCRH.

Dr. Wojewski appealed the district court's decision. During the pendency of this appeal, Dr. Wojewski died. His widow, Sara Wojewski, has been substituted as appellant. Both parties moved to dismiss as moot the portion of the appeal pertaining to the claim under Title III of the ADA because Title III only provides injunctive relief, which Dr. Wojewski's death renders impossible. Because the Title III claim has become moot, we vacate the district court's order and remand with instructions to dismiss the claim as moot. *Epp v. Kerrey*, 964 F.2d 754, 756 (8th Cir. 1992) (citing *United States v. Munsingwear*, 340 U.S. 36, 39 (1950)). We address the remaining claims on the merits.

## II. *Discussion*

On appeal, appellant contends that the district court erred in granting summary judgment as to the ADA Title I claim and the Rehabilitation Act claim. "We review grants of summary judgment de novo." *Lerohl v. Friends of Minn. Sinfonia*, 322 F.3d 486, 488 (8th Cir. 2003). "Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id*. (citing Fed. R. Civ. P. 56(c)). We hold that summary judgment was proper.

### A. *Title I Claim*

Dr. Wojewski's Title I claim turns on whether he was an "employee" of the hospital. Appellant contends that Dr. Wojewski was an employee due to (1) the economic reality of his circumstances (i.e., that he was completely dependant upon

RCRH for his livelihood); and (2) the heightened level of control and authority that RCRH exercised over him.

The ADA broadly protects the employment rights of the disabled. "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112 (a). While the ADA protects "employees," the Act does not protect independent contractors. *Lerohl*, 322 F.3d at 489. We have said "Congress adopted a circular definition of 'employee'—an employee is an 'individual employed by an employer.'" *Id.* (citing 42 U.S.C. §§ 2000e(f), 12112(4)). In determining whether a person is an employee or an independent contractor, the Supreme Court instructs us to consider the following nonexhaustive list of factors from the Restatement (Second) of Agency § 220(2) (1958):

> In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party. . . . No one of these factors is determinative.

*Lerohl*, 322 F.3d at 489 (quoting *Creative Non-Violence v. Reid*, 490 U.S. 730, 751–52 (1989) (citing Restatement (Second) of Agency § 220(2) (1958))).[2] "In weighing these factors, 'all of the incidents of the relationship must be assessed and weighed with no one factor being decisive.'" *Lerohl*, 322 F.3d at 489 (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 324 (1992)). "The district court may properly consider economic aspects of the parties' relationship." *Id.* (citing *Wilde v. County of Kandiyohi*, 15 F.3d 103, 106 (8th Cir. 1994)).

Appellant argues that RCRH exercised a heightened level of control over Dr. Wojewski to such an extent that he was an employee for ADA purposes. Appellant contends that the terms of the 2003 Letter of Agreement subjected Dr. Wojewski to more control by RCRH than most doctors and perhaps rendered him the most controlled doctor in America.

The district court rejected this argument based on *Cilecek v. Inova Health System Services*, 115 F.3d 256, 262 (4th Cir. 1997), which states that "[b]ecause of the overarching demands of the medical profession, the tension in professional control

_____

[2]Restatement (Second) Agency§ 220, comment h provides:

The relation of master and servant is indicated by the following factors: an agreement for close supervision or de facto close supervision of the servant's work; work which does not require the services of one highly educated or skilled; the supplying of tools by the employer; payment by hour or month; employment over a considerable period of time with regular hours; full time employment by one employer; employment in a specific area or over a fixed route; the fact that the work is part of the regular business of the employer; the fact that the community regards those doing such work as servants; the belief by the parties that there is a master and servant relation; an agreement that the work cannot be delegated.

between doctors and hospitals for medical services rendered at hospitals is not, we believe, a reliable indicator of whether the doctor is an employee or an independent contractor at the hospital." As noted by the district court and by appellees, several other circuits have held that a doctor who loses hospital privileges is an independent contractor. *Shah v. Deaconess Hosp.*, 355 F.3d 496 (6th Cir. 2004) (holding that surgeon with surgical privileges was not an employee of hospital and thus could not bring suit under either the Age Discrimination in Employment Act or Title VII of the Civil Rights Act of 1964); *Vakharia v. Swedish Covenant Hosp.*, 190 F.3d 799, 805–06 (7th Cir. 1999) (holding that anesthesiologist whose staff privileges were terminated was not a hospital employee and thus could not bring suit under either the Age Discrimination in Employment Act or Title VII of the Civil Rights Act of 1964); *Cilecek*, 115 at 262; *Alexander v. Rush N. Shore Med. Ctr.*, 101 F.3d 487 (7th Cir. 1996) (holding that physician was an independent contractor and thus could not sue hospital under Title VII of the Civil Rights Act of 1964); *Diggs v. Harris Hosp.-Methodist, Inc.*, 847 F.2d 270, 271 (5th Cir. 1988) (holding that physician with staff privileges is not an employee and thus cannot bring claim under Title VII of 1964 Civil Rights Act).

Applying the relevant tests to these facts, we hold the 2003 Letter of Agreement did not convert the relationship between RCRH and Dr. Wojewski into that of employer and employee. Dr. Wojewski performed highly skilled surgical work, leased his own office space, scheduled his operating room time, employed and paid his own staff, billed his patients directly, did not receive any social security or other benefits from RCRH, and did not receive a form W-2 or 1099 from RCRH. The district court correctly concluded that Dr. Wojewski was an independent contractor. The 2003 Letter of Agreement certainly subjected Dr. Wojewski to a heightened level of personal control. However, the controls set forth in the agreement are akin to the normal tensions discussed in *Cilecek*. RCRH could take reasonable steps to ensure patient safety and avoid professional liability while not attempting to control the manner in which Dr. Wojewski performed operations. *Cilecek*, 115 F.3d at 262.

-7-

## B. *Rehabilitation Act*

The district court held that Dr. Wojewski's claim under the Rehabilitation Act failed because he was not an employee. On appeal, appellant argues that the Rehabilitation Act does not require employee status, or, in the alternative, Dr. Wojewski was an employee under the same arguments relating to his claim under Title I of the ADA. We have already held that Dr. Wojewski was an independent contractor, not an employee. Therefore, we need only address whether the Rehabilitation Act provides relief for independent contractors.

Section 504 of the Rehabilitation Act provides in relevant part that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794. "To prevail on a claim under § 504, a plaintiff must demonstrate that: (1) he is a qualified individual with a disability; (2) he was denied the benefits of a program or activity of a public entity which receives federal funds; and (3) he was discriminated against based on his disability." *Gorman v. Bartch*, 152 F.3d 907, 911 (8th Cir. 1998) (footnote omitted) (citing § 794(a)).

Although the ADA has no federal funding requirement, "it is otherwise similar in substance to the Rehabilitation Act, and 'cases interpreting either are applicable and interchangeable.'" *Gorman*, 152 F.3d at 912 (quoting *Allison v. Dep't of Corr.*, 94 F.3d 494, 497 (8th Cir.1996)). Besides the funding requirement, another important difference between the two acts is that the Rehabilitation Act "imposes a requirement that a person's disability serve as the *sole* impetus for a defendant's adverse action against the plaintiff." *Amir v. St. Louis Univ.*, 184 F.3d 1017, 1029 n.5 (8th Cir. 1999) (emphasis original); *see also* § 794(a). The parties do not dispute that RCRH receives federal funding or that the termination of Dr. Wojewski's medical staff appointment was due to his disability. The dispute centers upon whether Dr. Wojewski is "a qualified individual with a disability."

The parties cite no case that has decided whether a non-employee can be a qualified individual under § 504. Appellant relies heavily on *Menkowitz v. Pottstown Memorial Medical Center*, 154 F.3d 113 (3rd Cir. 1998) and cites *Schalk v. Associated Anesthesiology Practice*, 316 F. Supp. 2d 244, 250 (D. Md. 2004), but these cases do not decide the crucial issue. *Menkowitz* addressed whether the physician plaintiff was excluded solely due to his disability; the issue of whether the plaintiff was a qualified individual was not in dispute and was not decided by *Menkowitz*. 154 F.3d at 123–24. In *Schalk*, the court expressly stated that it was not deciding the issue of whether an employer-employee relationship was required and dismissed the claim as barred by the statute of limitations. *Schalk*, 316 F. Supp. 2d at 250.

In reaching its decision, the district court relied upon our decision in *Beauford v. Father Flanagan's Boys' Home*, 831 F.2d 768, 771 (8th Cir. 1987). There, we stated that "section 504 was designed to prohibit discrimination within the ambit of an employment relationship in which the employee is potentially able to do the job in question." The *Beauford* court considered a Department of Health and Human Services regulation, which provided that "[w]ith respect to employment, a handicapped person who, with reasonable accommodation, can perform the essential functions of the job in question[.]" *Beauford*, 831 F.2d at 771 (citing 45 CFR § 84.3(l)).[3] The district court interpreted *Beauford* as defining "a qualified individual with a disability" as an "employee." However, *Beauford* involved a plaintiff who was clearly an employee. In other words, *Beauford* did not decide whether the Rehabilitation Act applies to independent contractors.

Given the similarity between Title I and the Rehabilitation Act, absent authority to the contrary, we construe both to apply to an employee-employer relationship and decline appellant's invitation to extend coverage of the Rehabilitation Act to

---

[3]The actual citation in *Beauford* is to 45 C.F.R. § 84.3(k), but this provision has been re-codified as 45 C.F.R. § 84.3(l).

independent contractors. Though we do not find that *Beauford* controls, we do find it somewhat helpful in that it clearly states that the focus of the Rehabilitation Act is upon providing remedies for individuals who are employees. The Rehabilitation Act and Title I of the ADA are interchangeable in many respects. *E.g., Gorman*, 152 F.3d at 912. The ADA requires an employee-employer relationship, and the Rehabilitation Act contemplates the same. Furthermore, as discussed in *Beauford*, 831 F.2d at 771, the relevant portion of the regulations couches the scope of the Rehabilitation Act in terms of employment. *See* § 84.3(l). Because Dr. Wojewski was not an employee of RCRH, the district court correctly granted summary judgment to RCRH.

## III. *Conclusion*

We vacate the district court's order and remand with instructions to dismiss the Title III claim as moot. With respect to Dr. Wojewski's claims under Title I of the ADA and the Rehabilitation Act, we affirm the grant of summary judgment to the defendants because Dr. Wojewski was not an employee of the hospital.

_____